IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM P. HALE,

        Plaintiff,

vs.                                                                       No.  CV 99-1116 JP/KBM

MISSISSIPPI CHEMICAL CORPORATION,
EDDY POTASH, INCORPORATED, and
DALE JANWAY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

On March 10, 2000 the remaining Defendants, Mississippi Chemical Corporation ("Mississippi Chemical"), Eddy Potash, Incorporated ("Eddy Potash"), and Dale Janway ("Janway") filed a Motion For Summary Judgment (Doc. No. 40).[1]  Although Plaintiff requested and was granted an extension to respond to the motion for summary judgment, he did not file his response until April 20, 2000, almost three (3) weeks after the extended deadline.  On May 25, 2000, more than a month after filing his untimely response, Plaintiff filed his Motion For Extension of Time To File Response To Motion For Summary Judgment (Doc. No. 50).  After carefully considering the briefs, the pleadings, and the applicable law, I conclude that the Motion For Extension of Time should be DENIED, and that the Motion For Summary Judgment should be GRANTED.

---

[1] All of Plaintiff's claims against former Defendant A.H. Gutierrez, M.D. were dismissed previously after Plaintiff failed to respond to a motion to dismiss and two motions for summary judgment filed by that Defendant.

## I. BACKGROUND

Plaintiff William P. Hale was employed by Eddy Potash, where on September 30, 1996 he was injured on the job. After about a year on medical leave Plaintiff was terminated by Mississippi Chemical, Eddy Potash's successor, purportedly because of this one-year absence. Plaintiff claims he was terminated in violation of a collective bargaining agreement ("CBA") and for retaliatory reasons that violate public policy, i.e., for his union activities and for reporting to regulatory agencies illegal and unsafe practices regarding mandatory 12-hour work shifts at the potash mine.

Counts I and II are for breach of express and implied contract. Count III is for wrongful or retaliatory discharge. The remainder of the counts (IV to IX) were dismissed previously pursuant to four motions to dismiss or for summary judgment, none of which was responded to by Plaintiff.

## II. MOTION FOR EXTENSION OF TIME

Having missed the extended deadline for filing his response to the motion for summary judgment by nearly three weeks, Plaintiff belatedly moves for an extension of time to file his response. No justification is given for the late filing other than "the press of time and other commitments." Pl. M/Ext. at 1.

Defendants oppose the motion for extension. They note that the Court has dismissed all of Plaintiff's claims against Defendant Gutierrez and most of his claims against these Defendants because of Plaintiff's failure to file responses to four motions throughout the litigation. *See, in rev. order,* Judgments and Orders dated March 1, 2000, January 13, 2000, January 7, 2000, and November 18, 1999. They also note that Plaintiff's motion for extension was filed long after the

2

expiration of the response period. Rule 6(b)(2) of the Federal Rules of Civil Procedure provides:

> **Enlargement.** When by these rules . . . an act is required or allowed to be done at or within a specified time, the court *for cause shown* may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect*; . . ..

Fed. R. Civ. P. 6(b)(2) (emphasis added). Plaintiff has failed to show "cause" for his delay, and has certainly not established "excusable neglect." Instead, Plaintiff argues that he "has a legitimate defense to the Defendants position." Pl. Brief at 2. He recognizes that the Court has the power to sanction a defaulting party by dismissing the action, but he argues that such a severe sanction should be "reserved for the extreme case and is appropriate only when lesser sanctions would not serve the ends of justice." Id. He then contends that his failure to respond to the four earlier dispositive motions was the "result of a tactical decision to limit issues of trial and should not be assumed to be indicative of his position in this matter." Id. at 3.

Defendants counter that Plaintiff's "tactics" of failing, repeatedly, to respond to dispositive motions suggest that he acted in bad faith by pleading claims that should not have been brought in the first place, and that he gave no thought to the time and expense these tactics caused Defendants to expend. For this reason, and because of Plaintiff's failure to articulate any cause or justifiable reason for the delay in responding, Defendants contend that Plaintiff has not met the standard of Rule 6(b)(2) and the late response should not be accepted.

A motion for extension must be brought before the time for responding has expired, and if a motion is timely filed before the response deadline, the standard for granting such a motion is lenient. The Tenth Circuit has established a more stringent standard for Rule 6(b)(2) motions. In In re Four Seasons Sec. Laws Litigation, 492 F.2d 1288 (10th Cir. 1974), the court interpreted

the rule to require "both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying with the specified period." Id. at 1290. I conclude that Plaintiff has not met this standard.

The law, however, favors resolution of disputes on the merits. Therefore, I will also examine the merits of the summary judgment motion, including Plaintiff's untimely response and Defendants' conditional reply.

### III. MOTION FOR SUMMARY JUDGMENT

**A. Contract claims.** In their motion for summary judgment, Defendants argue that Plaintiff's contract claims are preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Preemption is triggered because resolution of Counts I and II would unquestionably require interpretation of the CBA. *See* Steelworkers v. Rawson, 495 U.S. 362, 368-72 (1990); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985).

The Court may either dismiss these claims as preempted or treat them as federal § 301 claims. Allis-Chalmers, 471 U.S. at 220-21. If I treat these as § 301 claims, they can only survive if Plaintiff (1) exhausted his grievance remedy under the CBA, Garwin v. American Tel. & Tel. Co., 174 F.3d 1087, 1093 (10th Cir. 1999), and (2) filed his claims within the applicable statute of limitations.

*Exhaustion of grievance procedure.* It is undisputed that the CBA required exhaustion and that Plaintiff did not exhaust the grievance procedure. A failure to exhaust may be excused where the union breached its duty to represent the employee fairly in the grievance procedure. Vaca v. Sipes, 386 U.S. 171, 185-86 (1966). In an attempt to escape the exhaustion requirement, Plaintiff argues that the union "effectively ceased to function as his representative . . . [because it]

4

handled his grievances in a perfunctory manner that essentially ignored a meritorious grievance." Pl. Resp. at 6-7.  Plaintiff testified in his deposition that all the union did was to place his written grievance on the desk of Defendant Janway.  Plaintiff contends, therefore, that he "exhausted his contractual remedies as far as he could given the Union's breach of its duty to fairly represent him."  Id. at 7.  Aside from the fact that Plaintiff has neither sued his union nor stated a claim for breach of the duty of fair representation against it in his Complaint, Plaintiff's evidence is insufficient to excuse his failure to exhaust the grievance procedure.  Although a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, Webb v. ABF Freight Sys., Inc., 155 F.3d 1230 (10th Cir. 1998), the employee must show that his grievance was meritorious.  See Edwards v. Int'l Union, United Plant Guard Workers of America (UPGWA), 46 F.3d 1047 (10th Cir. 1995).  This he has failed to do.

Plaintiff presents only his own statement and belief that the CBA did not allow the company to terminate him after a one-year medical absence.  He fails even to cite to the operative wording of the CBA itself to support his belief, probably with good reason, because the wording of the CBA seems to allow employees a leave of absence for injury or illness only for "up to" one year.  Def. Ex. A, Art. 9 at 23.

*Statute of limitations.*  Even if his failure to exhaust the grievance procedure were excused, Plaintiff's "hybrid" claim would have stumbled on the statute of limitations.  He filed his suit approximately 20 months after his termination.  For most § 301 hybrid claims, in which an employee sues the employer for breach of contract and the union for breach of the duty of fair representation, a six-month statute of limitations applies.  DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 161-62 (1983).  To escape this result, Plaintiff now casts off the union

5

claim and focuses only on his claim against the employer.  It is true that a simple claim against an employer for breach of a CBA is governed by the most applicable state statute of limitations. Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1216 (6th Cir. 1987).  But Plaintiff cannot avoid the six-month limitation applicable to hybrid claims by suing only his employer, because without a claim against the union, his § 301 claim falls for failure to exhaust.

**B. Retaliatory discharge claim.**  Count III for retaliatory discharge is not preempted by § 301.  Jarvis v. Nobel/Sysco Food Servs. Co., 985 F.2d 1419, 1426-27 (10th Cir. 1993).  Plaintiff alleges he was discharged for his union activities and for making reports to regulatory agencies concerning illegal and unsafe practices at the potash mine.

To prevail on a claim of retaliatory discharge, employees must prove they were fired because:

> they performed acts that public policy has authorized or would encourage, or . . . refused to do something required by an employer that public policy would condemn, . . . and must show a causal connection between their actions and their subsequent discharge. . . .  In addition, in cases involving discharge for reporting illegal activity, or 'whistleblowing,' employees must show that their actions furthered a public interest rather than a private one.

Garrity v. Overland Sheepskin Co. of Taos, 121 N.M. 710, 714,  917 P.2d 1382, 1386 (1996). *See also* UJI-CIV 13-2304 N.M.R.A. 1999 (plaintiff must prove motivating factor of termination was wrongful and in violation of public policy).

In his response, Plaintiff argues that there is a material issue of fact concerning the true reason for his termination.  He claims that, contrary to the medical report by the company doctor, he was able to return to work after his year's medical leave, citing a functional capacity evaluation performed a few months after his termination.  This fails to address the undisputed fact of his one-

6

year medical leave of absence, which was the reason given for the termination.  Plaintiff also charges there was a sinister purpose in his termination by alleging that the new mine operator "has no unions" and that "no union officer or activist was employed by the new owner."  Pl. Resp. at 9.  This claim suffers from a lack of evidence that Plaintiff was discharged for any reason that was wrongful, or that the true reason was not the one given by the employer, i.e., that he was off work due to an injury for over a year.

**C. Claims against Defendant Dale Janway.**  Defendant Janway was a safety manager while Plaintiff was employed at Eddy Potash, and may have been involved in the successor company's decision to terminate Plaintiff after his one-year-plus medical leave of absence.  Janway seeks to be dismissed on the grounds that he was not the employer and cannot be liable for the two breach of contract claims or the tort claim for wrongful termination.  Because there is insufficient evidence to support these claims against Plaintiff's employer, there is no reason not to dismiss them against Defendant Janway, as well.

## IV.  CONCLUSION

Because Plaintiff has failed to demonstrate that he could survive the motion for summary judgment on the merits, and because he did not meet the requirements of Fed. R. Civ. P. 6(b)(2), I conclude that his motion for extension should be DENIED and his untimely response should be stricken.  Because Plaintiff did not timely file a response to the motion for summary judgment, and, therefore, is deemed to have consented to the granting of it, *see* D.N.M.LR-Civ. 7.5(b), and because Plaintiff's response, even if considered, is inadequate to meet his burden to avoid summary judgment on the merits, I conclude that Defendants' motion for summary judgment should be GRANTED.

NOW, THEREFORE, IT IS ORDERED that Plaintiff's Motion For Extension of Time To File Response To Motion For Summary Judgment is hereby DENIED;

IT IS FURTHER ORDERED that Plaintiff's untimely response to the motion for summary judgment (Doc. No. 41) is hereby STRICKEN;

IT IS FURTHER ORDERED that Defendants' Motion For Summary Judgment is hereby GRANTED.  A separate Summary Judgment will be entered concurrently with entry of this memorandum opinion and order.

_____
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:  James W. Klipstine Jr., Hobbs, N.M.

Counsel for Defendants:  Scott D. Gordon, Jeffrey L. Lowry, RODEY, DICKASON, SLOAN, AKIN & ROBB, Albuquerque, N.M.